UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS PEREZ OLIVO,
  a/k/a Carlos Perezolivo,

                      Plaintiff,

           v.                                            9:17-CV-0357
                                                           (BKS/DJS)

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al.,

                      Defendants.
_____

APPEARANCES:

CARLOS PEREZ OLIVO
  a/k/a Carlos Perezolivo
08-A-6428
Plaintiff, pro se
Auburn Correctional Facility
Box 618
Auburn, NY 13021

BRENDA K. SANNES
United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Carlos Perez Olivo, also known as Carlos Perezolivo, pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an in forma pauperis application.[1] Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). Plaintiff is currently incarcerated at Auburn Correctional Facility ("Auburn C.F.") and has not paid the filing fee for this action.

---

[1] This action was originally filed in the Western District of New York and was transferred to this District by Order of United States District Judge David G. Larimer of the Western District of New York. Dkt. No. 3.

## II. DISCUSSION

### A. IFP Application

Plaintiff has submitted a completed and signed IFP Application (Dkt. No. 2) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 6. Accordingly, plaintiff's IFP Application is granted.

### B. Initial Screening

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116

---

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

(2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

3

Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

**C.     Summary of the Complaint**

The complaint asserts alleged wrongdoing arising at Auburn C.F. while plaintiff was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl. Plaintiff names the New York State Department of Corrections and Community Supervision; Anthony Annucci, Commissioner of DOCCS; and H. Graham, the Superintendent at Auburn C.F., as defendants. Compl. at 1-2. Plaintiff sues all of the defendants in their individual and official capacities. The following facts are set forth as alleged by plaintiff in his complaint.

Plaintiff was placed in the protective custody unit at Auburn C.F. near an inmate with known mental health issues and an infectious disease ("Inmate 1"). Compl. at 5. On April 18, 2016, Inmate 1 threw an "unknown brown liquid" in plaintiff's face and eyes, "causing [plaintiff] permanent vision impairment [and] physical pain." *Id*. Inmate 1 had thrown feces at another inmate two months earlier and "days before assaulting plaintiff [Inmate 1] was moved from Unit E-4 to E-7 for the same behavior." *Id*. Later that same day, another inmate "with a known history of violent tendencies" ("Inmate 2"), who was also housed in the protective custody unit with plaintiff, threw "an unknown milky substance on plaintiff's chest, causing him physical discomfort and pain." *Id*. at 5-6. Inmate 2 "had just days before been released from keeplock for aggressive behavior." *Id*. at 6. Defendants "hav[e] control over plaintiff [and] failed to exercise and act like reasonable and careful people" because inmates with known violent tendencies were allowed to be placed in the protective custody unit. *Id*. at 5-6.

Despite "repeated oral and written" requests, defendants "were indifferent to and failed to provide plaintiff with medical care for injuries" suffered as a result of the assaults by Inmate 1 and Inmate 2. Compl. at 7. Plaintiff "was finally seen by an ophthalmologist" in September, 2016, but was never tested to see if he contracted an infectious disease. *Id*. As relief, plaintiff seeks injunctive relief against defendant New York State Department of Corrections and Community Supervision, namely that it "be sanctioned and prevented from housing mentally ill inmates with a history of violent behaviour [*sic*] in protective custody." *Id*. at 6. Plaintiff also seeks an award of monetary damages against all defendants. *Id*. For a complete statement of plaintiff's claims, refer to the complaint.

Construed liberally, the complaint asserts Eighth Amendment failure-to-protect and medical indifference claims against all of the defendants.

**D.   Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

**1. Eleventh Amendment Immunity**

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

5

Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

### a. New York State Department of Corrections and Community Supervision

State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U.S. 139, 142-47 (1993); *McGinty v. New York,* 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'"); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."). Thus, plaintiff's claims against the New York State Department of Corrections and Community Supervision fail because it is an arm of New York State. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims against DOCCS on 11th Amendment grounds); *Jones v. New York State Div. of Military and Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999) (the Eleventh Amendment bars Section 1983 suits against state

6

agencies).  The fact that plaintiff seeks injunctive relief, in addition to monetary relief, against the New York State Department of Corrections and Community Supervision does not change this conclusion.  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted).  However, such claims cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities.  *Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991).

Accordingly, the New York State Department of Corrections and Community Supervision, and all claims against it, are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.

### b.  Official Capacity Claims Against Annucci and Graham

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v.*

*Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."). Plaintiff names defendants Annucci and Graham in both their individual and official capacities. Compl. at 2. Plaintiff identifies each defendant as an employee of the DOCCS, and requests only monetary damages from Annucci and Graham. *Id*. at 2, 6.

Therefore, plaintiff's claims for monetary damages against defendants Annucci and Graham in their official capacities are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.

Although plaintiff did not request injunctive relief from defendants Annucci or Graham, in light of plaintiff's pro se status, the Court has considered whether such relief might be available. In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted). Despite the Court's liberal construction of plaintiff's complaint, plaintiff alleges no facts to plausibly suggest that the wrongdoing alleged in the complaint is ongoing against plaintiff so as to warrant issuance of prospective injunctive relief. Thus, insofar at plaintiff seeks injunctive relief against defendants Annucci and Graham in their official capacities, those claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.

## 2. Eighth Amendment Claims Against Annucci and Graham

The Eighth Amendment prohibits cruel and unusual punishment which encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citations and quotations omitted). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "[V]icarious liability is inapplicable to . . . § 1983 suits." *Iqbal* 556 U.S. at 676.

Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[3]

### a. Failure-to-Protect Claims

Under the Eighth Amendment, prison officials are required to take reasonable measures to guarantee the safety of inmates and to protect them from known harm. *Farmer*, 511 U.S. at 832-33. In *Farmer*, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id*. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

---

[3] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

*Id*. at 837; *Hines v. Lacy*, 189 F.3d 460 (2d Cir. 1999).

The complaint is devoid of any facts to plausibly suggest that defendants Annucci or Graham were personally involved in the decision to house either Inmate 1 or Inmate 2 in the protective custody unit with plaintiff. Even if plaintiff could provide facts to plausibly suggest such personal involvement, the complaint includes no facts to plausibly suggest that defendants Annucci or Graham acted with deliberate indifference with respect to plaintiff's safety. In other words, there are no facts to plausibly suggest that the defendants had actual knowledge that plaintiff faced a substantial risk of serious harm from Inmate 1 or Inmate 2 but disregarded that risk.[4] *See Farmer*, 511 U.S. at 837 (Deliberate indifference requires that the defendant official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and in fact "dr[e]w the inference."); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (defendant official must "ha[ve] knowledge that an inmate faces a substantial risk of serious harm and . . . disregard[ ] that risk by failing to take reasonable measures to abate the harm.").

The only factual allegations in plaintiff's complaint concerning defendants Annucci and Graham with respect to plaintiff's failure-to-protect claims relate to their general supervision of DOCCS facilities. *See* Compl. at 5 (alleging that defendants "hav[e] control over plaintiff"). Thus, it appears that plaintiff named Commissioner Annucci and Superintendent Graham as defendants solely by virtue of their supervisory positions at DOCCS. However, Section 1983

---

[4] In order to "sufficiently allege supervisory liability based upon deliberate indifference, a plaintiff must show (1) that the supervisor had actual or constructive notice that unconstitutional acts were occurring and deliberately failed to take corrective action and (2) that there is an affirmative causal link between the supervisor's inaction and the plaintiff's injury." *Ziemba v. Thomas*, 390 F. Supp. 2d 136, 144 (D. Conn. 2005) (citing *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)) (footnote omitted). The factual allegations in plaintiff's complaint are inadequate to make that showing with regard to his failure-to-protect claims against defendants Annucci or Graham.

11

damages will not be imposed based upon a respondeat superior theory of liability. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*.") (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)); *see also Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Dismissal of a section 1983 claim is proper where, as here, the plaintiff does no more that allege that [defendant] was in charge of the prison.") (internal quotations omitted); *Richardson*, 347 F.3d at 435 ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") (quoting *Ayers*, 780 F.2d at 210); *Wright*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority); *Castillo v. Comm'r New York State DOCS,* No. 06-CV-0858, 2008 WL 4501881, at *2 (W.D.N.Y. Sept. 30, 2008) (dismissing claims for failure to allege personal involvement, since "[p]laintiff's theory of liability appears to be grounded simply upon the fact that the defendants were in charge of the prison").

Accordingly, plaintiff's Eighth Amendment failure-to-protect claims against defendants Annucci and Graham are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Medical Indifference Claims

In order to state an Eighth Amendment claim arising out of inadequate medical care, a prisoner must show "'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to

12

prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

Even accepting the allegations in plaintiff's complaint as true, plaintiff has not alleged any facts suggesting that defendants Annucci or Graham participated in the alleged deprivation of medical care or had any personal knowledge of the alleged deprivation of medical care. Although a plaintiff need not plead facts in great detail, plaintiff's formulaic and conclusory allegations that defendants Annucci and Graham "were indifferent to and failed to provide plaintiff with medical care for his injuries" without some facts to explain the basis for those conclusions or how each of the named defendants participated in alleged wrongdoing, are insufficient to state a claim against them. *See Iqbal*, 556 U.S. at 678 (A pleading that only "tenders naked assertions devoid of further factual enhancement" will not survive sua sponte review.) (internal quotations and alterations omitted). Although plaintiff alleges that he made "repeated requests" for medical care, he does not allege to whom those requests were made. Moreover, even if plaintiff could demonstrate that he notified Annucci and Graham of his medical needs, he fails to provide any facts to plausibly suggest that either

defendant acted or failed to act with the requisite state of mind - deliberate indifference.[5]

To the extent that plaintiff appears to hold defendants Annucci and Graham responsible for his alleged inadequate medical care because of their supervisory positions with DOCCS, his claims also fail because a defendant may not be held liable simply because he holds a high position of authority or is in charge of a prison. *See* Part II.D.2.a., *supra* (citing cases).

Accordingly, plaintiff's Eighth Amendment medical indifference claims against defendants Annucci and Graham are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Dismissal with Leave to Amend

Based upon the foregoing, the Court finds that the complaint fails to state one or more claims against the defendants upon which relief may be granted by this Court. As a result, the complaint is dismissed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). In light of his pro se status, the Court will afford plaintiff the opportunity to file an amended complaint. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Any amended complaint filed by plaintiff must bear his original signature, and must be a complete pleading which will supersede and replace the original complaint in its entirety. Plaintiff must name one or more defendants, and must set forth a short and plain statement of the facts he relies on in support of his claim that the individual named as a defendant engaged in misconduct or wrongdoing that violated plaintiff's constitutional rights. While it is not improper for a plaintiff to identify a defendant only as "John/Jane Doe" at the outset of

---

[5] The factual allegations in plaintiff's complaint are inadequate to make a showing of deliberate indifference with respect to his medical care claims against defendants Annucci or Graham. *See* n.4, *supra*.

litigation, a complaint must nevertheless set forth factual allegations regarding the actions taken by each Doe defendant which plaintiff relies on in support of his claim that the defendant was personally involved in conduct that violated his constitutional rights.

Plaintiff is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;[6] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's authorization form (Dkt. No. 6), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915;[7] and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's authorization form (Dkt. No. 6) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28

---

[6] Plaintiff should note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[7] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

15

U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment: (1) all claims against the New York State Department of Corrections and Community Supervision and (2) the claims for monetary damages against defendants Annucci and Graham in their official capacities;[8] and it is further

**ORDERED** that the New York State Department of Corrections and Community Supervision is **DISMISSED** as a defendant; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action, he must file an amended complaint as directed above **within thirty (30) days** from filing date of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

---

[8] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Because these claims are barred by the Eleventh Amendment, leave to amend is denied.

16

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: June 20, 2017
         Syracuse, NY

Brenda K. Sannes
U.S. District Judge